**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMIR RASHEID ALLEN, | ) |
| | ) Civil Action No. 2: 13-cv-1776 |
| Petitioner, | ) |
| | ) Senior District Court Judge |
| v. | ) Terrence F. McVerry |
| | ) |
| DANIEL P. BURNS, Superintendent, and | ) |
| THE DISTRICT ATTORNEY OF | ) United States Magistrate Judge |
| ALLEGHENY COUNTY, and THE | ) Cynthia Reed Eddy |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF PENNSYLVANIA, | ) |
| Respondents. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.      RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by

Petitioner, Amir Racheid Allen, pursuant to 28 U.S.C. § 2254, be dismissed and that a certificate

of appealability be denied.

## II.      REPORT

### A.      Relevant and Procedural Background

Petitioner, Amir Rasheid Allen ("Petitioner" or "Allen"), is a state prisoner confined at

the State Correctional Institution – Forest in Marienville, Pennsylvania. He is challenging the

judgment of sentence that was imposed upon him by the Court of Common Pleas of Allegheny

County on January 3, 2007.    The Superior Court of Pennsylvania described the evidence

presented at trial as follows:

> The Commonwealth's evidence established that on April 8, 2005, the
> victim, Robert Yetts, was walking with his wife, Melissa, his seven (7) year old
> son and was carrying his one (1) year old son.  The defendant approached the
> victim and his family, told the victim to step away from his family, and then shot
> the victim in the chest.  The defendant fled and the victim eventually died from

1

his wounds. Evidence as to motive established that the victim and his wife had separated in May of 2004. Approximately six (6) months later, she began a relationship with the defendant. On the night of April 7, 2005 the defendant and Melissa were at her house waiting for pizza to be delivered. When the defendant went down to answer a knock at the door, believing it was the pizza being delivered, the victim was there demanding to speak to his estranged wife. A physical confrontation between the victim and the defendant ensued at the conclusion of which the defendant ran from the house. The defendant claimed that the victim then stayed in the apartment with his wife and an argument between them ensured.

After the defendant left the scene, he called the police and indicated there was a domestic disturbance going on at Melissa's apartment. The police went there and asked if her husband was there. She said no, and the police left. The victim eventually left his wife's residence with the understanding that he would return in the morning so that could continue to discuss the future of their relationship. The victim returned the next day at approximately 8:00 a.m. He and his family were walking towards his car when the defendant pulled up, exited his car and shot the victim.

As the victim lay bleeding in the street, Pittsburgh Detective Jill McCoy, happened to drive by and stopped to investigate when she saw the victim fall to the ground. She approached the victim and could not detect a pulse. She summoned other officers and a medic unit. She also spoke with Melissa Yetts who told her that she knew who did this. Yetts provided a description of the vehicle the defendant fled in, but did not immediately identify the defendant by name to Detective McCoy. Neither Detective McCoy nor an off duty firefighter who provided first aid to the victim noticed a weapon on or about the victim. The first uniformed officers on the scene interviewed Melissa Yetts. She told them that the defendant shot her husband, gave a description of the defendant and of the vehicle he was driving, a large, gray Buick.

The Commonwealth also introduced two 911 calls made by the defendant during the early morning hours of April 9 (sic) in which he reported that the victim had entered Melissa Yetts house and that he believed that she was in danger. The patrolman who responded to that call also testified. He related that he spoke with Melissa Yetts at around 4:00 a.m. and she reported that her husband was no longer there. The officer did not see any evidence that she had been harmed or that her husband remained in the home. He communicated this information to the defendant, who remained in the area.

The defendant claimed at trial that Melissa Yetts was mistaken in her identification of him as the person she saw shoot her husband. He denied that he shot the victim.

*Commonwealth v. Allen*, 437 WDA 2007, 963 A.2d 561 (Pa. Super. Ct. 2008), (unpublished memorandum), *appeal denied*, 74 A.3d 1029 (Pa. 2009) (table) (hereinafter referred to as "*Allen-2*").

Allen was tried by jury between October 5 and 10, 2006, before the Honorable Jeffery A. Manning. Allen was convicted of Murder of the First Degree. On November 3, 2006, Allen was sentenced to a mandatory sentence of life imprisonment. Attorney David Chontos represented Allen during trial, at sentencing, and on direct appeal.

Allen, through Attorney Chontos, filed a timely Notice of Appeal with the Pennsylvania Superior Court, which was docketed at 437 WDA 2007. On appeal, Allen raised the following issues:

> Argument A: Alibi Instruction Was Wrong Because It Allowed The Jury To Use His Failure To Prove The Alibi As Evidence Of His Guilt
>
> Argument B: Eyewitness Identification Instruction Was Wrong Because Environmental Factors Were Present Impinging Upon The Opportunity to Observe

Brief for Appellant. (ECF No. 14-2, Exh. 4 at 18, 24.) The Superior Court, by Memorandum dated September 10, 2008, affirmed the judgment of sentence and on April 1, 2009, the Pennsylvania Supreme Court denied further review.

On March 26, 2010, Allen filed a timely *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546. The PCRA court appointed Scott Coffey, Esquire, to represent Allen who filed an amended petition raising the following claims:

> Claim 1 – Quinn Lee Bowman has revealed newly discovered evidence that he was the killer of Robert Yetts, and that Defendant had absolutely nothing to do with the murder.

> Claim 2 – Trial /Appellate Counsel was ineffective for failing to preserve a claim that the trial court erred in its alibi charge since it failed to convey that Defendant's failure to prove his alibi cannot be used as evidence of guilt, causing this claim to be waived on direct appeal.
>
> Claim 3 – Trial /Appellate Counsel was ineffective for failing to timely object to, ask for a curative instruction or raise an issue on appeal that the trial court erred in failing to grant a mistrial after Melissa Yetts, out of the blue, testified that Defendant apologized for shooting the victim.
>
> Claim 4 - Trial /Appellate Counsel was ineffective for failing to cross-examine Melissa Yetts about a card that she sent to Defendant while he was incarcerated after the shooting.

Amended PCRA Petition. (ECF No. 14-2, at 40 - 63). On January 6, 2012, the PCRA court (who was the trial judge who presided over Allen's criminal trial and sentencing) ordered a hearing on the after-discovered evidence issue and dismissed the three claims of ineffective assistance of counsel. Judge Manning appointed Patrick J. Thomassey, Esquire, to represent the witness, Quinn Lee Bowman ("Bowman"). On April 26, 2012, at the first PCRA hearing, the court ordered that Bowman undergo a mental health evaluation. After being found competent to testify, Bowman testified at Allen's second PCRA hearing held on May 7, 2012. The PCRA court took the matter under advisement and on September 12, 2012, filed a Memorandum Opinion and Order of Court denying relief finding that the testimony of Bowman was "simply not credible, when considered with the evidence presented at trial and, had such evidence been presented, would not likely to have changed the outcome." PRCA Court 1925(a) Memorandum Opinion and Order, 9/10/2012 (ECF No. 14-3 at 4 – 12) ("*Allen-3*").

Allen, through Attorney Coffey, filed a timely Notice of Appeal, which was docketed at No. 1504 WDA 2012. On appeal, Allen raised the following four claims:

> 1.      Did the trial court err in denying appellant's PCRA petition after two hearings since Quinn Lee Bowman revealed and testified to newly discovered

evidence that he was the killer of Robert Yetts, and that Appellant had absolutely nothing to do with the murder?

2.     Did the trial court err in denying Appellant's PCRA petition since trial / appellate counsel was ineffective for failing to preserve a claim that the trial court erred in its alibi charge since it failed to convey that Appellant's failure to prove his alibi cannot be used as evidence of guilt, causing this claim to be waived on direct appeal?

3.     Did the trial court err in denying Appellant's PCRA petition since trial / appellate counsel was ineffective for failing to timely object to, ask for a curative instruction or raise an issue on appeal that the trial court erred in failing to grant a mistrial after Melissa Yetts, unexpectedly, testified that Appellant apologized for shooting the victim?

4.     Did the trial court err in denying Appellant's PCRA petition since trial / appellate counsel was ineffective for failing to cross-examine Melissa Yetts about a card that she sent to Appellant while he was incarcered after the shooting.

Brief for Appellant. (ECF No. 14-3, at 18).

In its March 12, 2013, Memorandum, the Superior Court affirmed the dismissal of the PCRA Petition.  (ECF No. 14-4 at 1-18).  The Pennsylvania Supreme Court denied further review on September 12, 2013.  Allen, *pro se*, filed a timely Petition for Writ of Certiorari with the United States Supreme Court, which was denied on June 30, 2014.  *Allen v. Pennsylvania*, 134 S. Ct. 2880 (2014).

While the Petition for Writ of Certiorari was pending, on December 12, 2013, Allen initiated the present proceedings in this Court by filing a *pro se* petition for writ of habeas corpus.  Respondents filed an Answer on May 9, 2014. (ECF No. 13).  The matter is ripe for disposition.

**B.      Standard of Review**

1.      28 U.S.C. § 2254

        This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA").  Under this statute, habeas relief is only available on the grounds that Haddock's convictions were obtained in violation of his federal constitutional rights.  28 U.S.C. § 2254(a).  Errors of state law are not cognizable.  *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

        AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693  (2002).   It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations."  *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004).

        As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

        An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

        (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States has stressed the "highly deferential" review that this Court must accord the state court's decision under § 2254(d):

> We have explained that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 392, 410 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Id. at 411. Rather, that application must be "objectively unreasonable." Id. at 409. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Renico v. Lett,* 599 U.S. 766, 773 (2010). Even more pointedly, the Supreme Court elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings . . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue

claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert,* 387 F.3d at 247.

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).

      2.    <u>Threshold Requirements under 28 U.S.C. § 2254</u>

      a.    *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Respondents concede that Allen's claims are timely under AEDPA's statute of limitations and, as a result, the Court recommends that the claims be treated as such.

      b.    *Exhaustion*

Next, the Court must address the threshold question of whether Allen exhausted the "remedies available [to him] in the courts of the State." 28 U.S.C. § 2254(c). It is well settled that a state prisoner must exhaust all of his claims by "giv[ing] the state courts one full opportunity to resolve any constitutional issued by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 517 (1982). The burden is on the habeas petitioner to establish

that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system. *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)). In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[1] The petitioner retains the burden of showing that the claims he is raising in federal court are the "substantial equivalent" of those presented in state court. *Santana v. Fenton*, 685 F.2d 71, 73-74 (3d Cir. 1982). A federal court may deem a claim unexhausted if a petitioner raises arguments based entirely on state rather than federal law. *Bronshtein v. Horn*, 404 F.3d 700, 725-726 (3d Cir. 2005).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). This Court can deny an unexhausted claim on the merits only if the claim is without merit.

        c.    *State Court Procedural Default*

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the doctrine of procedural default. As the Court of Appeals for the Third Circuit explained in *Rolan v. Coleman*:

---

[1]    Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

> Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank,* 266 F.3d 218, 223-24 (3d Cir. 2001); or when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule, *see McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).

*Rolan*, 680 F.3d 311, 317 (3d Cir. 2012), cert. denied, 133 S, Ct, 669 (2012). Like the exhaution requirement, the doctrine of procedural default is "grounded in concerns of comity and federalism." *Coleman*, 501 U.S. at 730. The doctrine applies whether the default occurred at trial, on appeal, or during collateral proceedings, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), and applies only when a state procedural rule is consistently and regularly applied. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588–89 (1988)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either (i) "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice" or that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012). The United States Supreme Court has defined "cause" as "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. *Id.*

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice.

*Schlup v. Delo*, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petition). This exception, however, only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id*. at 321 (quoting *Murray*, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id*. at 327.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

With these principles in mind, each claim will be examined to determine whether it was presented to all of the state courts and, if so, whether they decided it on the merits or on the basis of an independent and adequate state procedural rule.

### C.    Discussion of Petitioner's Claims

At first blush, it appears that Allen has raised ten separate claims in his federal habeas petition. However, a number of the issues and claims overlap, and Respondents, without objection from Allen, have combined and narrowed the issues. Petitioner also claims that it was the ineffectiveness of  prior counsel that caused the default on these issues.[2]  The Court notes that such a claim is an argument to excuse the procedural default of any ineffective assistance of trial

---

[2]    This claim, as framed, is a combination of Claims Nine, Ten, and Twelve raised by Allen in his petition.

counsel claims only.[3]  For claims of ineffective assistance of trial counsel not preserved and thus

defaulted on collateral review, *Martinez* provides a possible means for establishing cause to

excuse the default.  *Martinez*, 132 S. Ct. at 1315.  As stated by Justice Kennedy in the majority

opinion:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding,[4]  a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*.  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id*. at 1318.  The Supreme Court noted that its holding "does not concern attorney errors in other

kinds of proceedings, including appeals from initial-review collateral proceedings."  *Id*. at 1320.

The Court will now proceed to address Allen's claims seriatim.

---

[3]  To the extent Allen is raising claims of ineffective assistance of PCRA counsel and PCRA appellate counsel such claims may be rejected summarily.  Allen did not have a federal constitutional right to counsel during his state post-conviction proceeding, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and therefore, cannot receive habeas relief on a claim that PCRA counsel were ineffective.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) ("*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals.") Accordingly, any claims of PCRA counsel or PCRA appellate counsel's ineffectiveness are simply not cognizable grounds for relief in federal habeas proceedings.

[4]  Pennsylvania requires claims of ineffective assistance of trial counsel to be raised in an initial-review collateral proceeding like a PCRA proceeding.  *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of ineffective counsel should be raised on collateral review). The decision in *Grant* is the decision that brings Pennsylvania within the rule of *Martinez*, i.e., that claims of PCRA counsel's ineffectiveness may serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness since the PCRA proceedings are the first opportunity in Pennsylvania to raise such claims of trial counsel's ineffectiveness.

*Claim One - Trial Court erred in denying the defense's request for a mistrial, which also undermined trial counsel's credibility.*[5]

Allen's first claim concerns the trial court's refusal to grant a mistrial based on the testimony of Melissa Yetts during direct examination by the Commonwealth. According to Allen, the trial judge's failure to declare a mistrial deprived him of a fair trial in violation of the due process clause.

Ms. Yetts testified that after Allen had been incarcerated he called her from jail. She recounted that conversation at trial as follows:

> MELISSA YATES: He told me he was sorry; he didn't mean to hurt anybody.
> He just meant to scare him.

(N.T. p. 32). After two other witnesses testified, and after trial resumed following the luncheon recess, defense counsel moved for a mistrial based on the testimony of Ms. Yetts. Defense counsel claimed that the Commonwealth failed to disclose the substance of this telephone call in discovery; that Allen's right to a fair trial was violated because counsel advised the jury in his opening that there was no confession; and that Allen was prejudiced by the mid-trial disclosure of this admission. The trial court denied the request for mistrial both because "it was untimely, having been made well after the challenged evidence was offered, and because the record established that the Commonwealth had no knowledge of this inculpatory statement before the witness disclosed it while testifying." The Trial Court 1925(a) Opinion, 10/10/07 at 5 (ECF No. 14-1 at 23) ("*Allen-1*").

On PCRA appeal, Allen, through counsel, raised the following claim:

---

[5]     This claim, as framed, is a combination of Claims One and Five raised by Allen in his petition.

> Did the trial court err in denying Appellant's PCRA petition since trial / appellate counsel was ineffective for failing to timely object to, ask for a curative instruction or raise an issue on appeal that the trial court erred in failing to grant a mistrial after Melissa Yetts, unexpectedly, testified that Appellant apologized for shooting the victim?

The Court finds that Claim One is exhausted as Plaintiff raised the "substantial equivalent" of the claim in his PCRA Petition and subsequent appeal. *Santana v. Fenton*, 685 F.2d 71, 73-74 (3d Cir. 1982). The Pennsylvania Superior Court found the claim to be waived because it was not properly pled; specifically, on appeal, Allen did not discuss each individual prong of an ineffective assistance of counsel claim, but rather argued the merits of his underlying claim.

Notwithstanding this finding, the Superior Court held that even if the issue had not been waived, the claim would not have merit. The Superior Court explained that because the Commonwealth did not have a duty to disclose evidence that it did not possess, Allen failed to prove the underlying merit to the ineffectiveness claim.

In his 1925(a) Opinion, Judge Manning explained his decision not to declare a mistrial as follows:

> Here, this Court accepted the prosecutor's representation that he did not know that Ms. Yetts was going to say that the defendant had confessed to her. The absence of such a statement in the police reports provided during discovery corroborates that representation. There was simply no reason to believe that the Commonwealth had prior knowledge that Ms. Yetts was going to testify that the defendant made a statement to her which was tantamount to a confession.

> The Commonwealth does not violate the rules of discovery when it fails to disclose evidence of which it has no knowledge. Where the records fails to disclose that the Commonwealth possessed the evidence disclosed for the first time at trial, there is no discovery violation and sanctions are inappropriate. *Commonwealth v. York*, 465 A.2d 1028, 1031 (Pa. Super. 1983). Finally, the Court would note that the evidence in this matter, separate and apart from this inculpatory statement, overwhelmingly established the defendant's guilty beyond a reasonable doubt.

*Allen-1*, at 7-8 (ECF No. 14-1, at 25-26.)   On federal habeas review, this factual finding is entitled to a presumption of correctness under § 2254(e)(1) and Allen can only rebut the presumption by clear and convincing evidence, which he has not done.

Pursuant to clearly established federal law, a trial court has discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity or that the ends of public justice would otherwise be defeated. *Renico v. Lett*, 559 U.S. 766, 774  (2010) ("The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.")

Both the PCRA court and the Superior Court reviewed this claim and both courts concluded that there was no evidence of anything occurring which would have warranted a mistrial. This conclusion was neither contrary to nor an unreasonable application of *Renico*.

Allen's claim of ineffectiveness is also without merit.  The clearly established federal law with respect to a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (a) that counsel's performance fall below an objective standard of reasonableness, and also (b) that the petitioner suffer prejudice as a result of counsel's error. The Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard.  *Boyd v. Waymart*, 579 F.3d 330, 334 (3d Cir. 2009).  The PCRA court concluded that trial counsel was not ineffective because neither the defense counsel nor the Commonwealth knew that Ms. Yetts was going to testify that she had a telephone conversation with Allen in which he expressed remorse for the shooting and the Superior Court affirmed. ("[B]ecause the Commonwealth did not have a duty to disclose evidence that it did not possess, Appellant has failed to plead and prove his underlying claim that counsel rendered ineffective assistance when he did not timely object to Melissa Yetts's testimony or appeal the trial court's

denial of his untimely motion for a mistrial.") (internal citations omitted). This conclusion was neither contrary to nor an unreasonable application of *Strickland*.

For all these reasons, the Court recommends that Claim One be dismissed.

*Claim Two - Trial Court erred in instructing the jury on Third-Degree Murder when Petitioner did not agree to such instruction.[6]*

Allen did not raise Claim Two on either direct or PCRA appeal. Respondent argues that this claim, therefore, is subject to exhaustion and procedural default bars. The Court agrees with Respondent and finds that Claim Two fails the exhaustion and procedural default requirement for habeas review. To the extent that Allen attempts to establish cause to excuse the procedural default pursuant to *Martinez,* the Court finds that the underlying ineffective assistance of trial counsel claim is not "substantial" as required by *Martinez*.

In order to assess the ineffectiveness claim raised in Claim Two, it is necessary to analyze whether a jury instruction on Murder of the Third Degree was proper. In his Concise Statement of Matters Complained of on direct appeal,[7] Allen contended that the trial court erred in providing the jury instruction on Murder of the Third Degree. Judge Manning addressed and rejected the issue as follows:

> First, the Court would note that it is impossible for the defendant to have been prejudiced by this instruction given that the jury found him guilty of Murder of the First Degree. Moreover, it is well settled that a Court should only instruct a jury on legal principles for which evidence has been presented. *Commonwealth v. Taylor*, 876 A.2d 916, 925 (Pa. Super. 2005). Accordingly, this Court would only have erred in instructing the jury on the charge of third degree murder if there were **no facts** present in this case that could reasonably have led the jury to conclude that the defendant was guilty of Murder of the Third Degree. The

---

[6]     This claim, as framed, is a combination of Claims Two and Six raised by Allen in his petition.

[7]     Although this claim was presented in Allen's Rule 1925(b) Statement, it was not included within his appellate brief.

record reveals clearly that such a verdict was a reasonable possibility based upon the evidence presented. The element that distinguishes first degree murder from third degree murder is the presence of a specific intent to kill. This jury may well have concluded that the Commonwealth failed to prove that the defendant intended to kill the victim when he shot him. Because malice can be inferred from the use of a deadly weapon on a vital part of the body, there clearly was sufficient evidence of malice here. As the evidence warranted an instruction of Third Degree Murder, it was properly given.

*Allen-1*, (ECF No. 14-1 at 9-10) (emphasis in original). While this opinion is not binding on this Court, the Court agrees with its reasoning and, based on a review of testimony adduced at trial, finds that the state court's conclusion was consistent with the facts presented at trial. Allen has not shown that he was prejudiced, as the record reflects that the trial court would have denied any motion by counsel objecting to this instruction. Under *Strickland,* there simply "can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Because there is no merit to Allen's underlying ineffective assistance of trial counsel claim, the procedural default of Claim Two is not excused under *Martinez*. As such, the Court recommends that Claim Two be dismissed because it is barred from habeas review.

> *Claim Three - The trial court gave an erroneous jury instruction regarding alibi testimony.[8]*

Allen contends that the alibi instruction led the jury to believe that if he did not prove his alibi, he was guilty. Allen also contends that his trial / appellate counsel was ineffective for failing to properly preserve this claim for direct appeal.

Initially, the Court notes that jury instructions are generally a matter of state law and "[f]ederal courts reviewing habeas claims cannot 'reexamine state court determinations on state

---

[8]      This claim, as framed, is a combination of Claims Three, Seven, and Eight raised by Allen in his petition.

law questions'." *Priester v. Vaughn,* 382 F.3d 394, 402 (3d Cir. 2004) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991)).

Allen raised the issue that trial court erred in giving the jury instruction on alibi testimony in his direct appeal; however the Superior Court found that he failed to preserve the claim for appeal. Allen then raised this claim as an ineffectiveness claim in the PCRA proceedings, but the Superior Court found the issue waived for failure to set forth and discuss each prong of the ineffectiveness test. However, the Pennsylvania Superior Court proceeded to analyze the ineffectiveness claim on the merits and stated that even if the issue had not been waived, the claim would not have merit as a matter of state law:

> We conclude that the above charge met the requirements of a proper alibi instruction. It advised the jury that the Commonwealth bore the burden of proof and that Appellant did not prove anything. Further, by instructing the jury that it "should consider [the alibi evidence] along with all other evidence . . . in determining whether or not the Commonwealth met its burden," the trial court properly conveyed that "a reasonable doubt could arise based upon alibi evidence even where the defense evidence is not wholly believed. Finally, the language of which Appellant complains, "the failure to establish an alibi . . . is not necessarily evidence of . . . guilt," alerted the jury to the fact that, due to the Commonwealth's burden of proof, the failure to "prove the alibi is not in and of itself a basis for a finding of guilt. Therefore, we conclude that the alibi instruction, when taken as a whole, advised the jury that Appellant's "failure to prove alibi is not tantamount to guilt." Accordingly, Appellant has failed to plead and prove that his underlying claim [of ineffectiveness] has merit and, even if he had met his burden of pleading the last two prongs of the [ineffective] test, his second issue would not merit relief.

*Commonwealth v. Allen*, 1504 WDA 2012 (unpublished slip opinion) (Pa. Super. Ct. 3/12/2013) (ECF No. 14-4 at 13) (internal citations omitted) ("*Allen-4*").

The Pennsylvania Superior Court found that the instruction as given met the requirements of a proper alibi instruction under Pennsylvania law. This Court cannot re-examine this determination of state law on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)

("[I]t is not the province of a federal habeas court to re-examine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States.")

As for Petitioner's contention that the alibi instruction denied him his federal constitutional right to due process, "[h]abeas relief for a due process violation concerning an absent or defective jury instruction is available only when the absence of an instruction, or a defective instruction, infects the *entire trial* with unfairness." *Real v. Shannon,* 600 F.3d 302, 309 (3d Cir. 2010) (quoting *Albrecht v. Horn,* 485 F.3d 103, 129 (3d Cir. 2007)) (emphasis added).

Taken as a whole, the alibi instruction given in Allen's trial correctly advised the jury as to the legal principles governing an alibi defense. Therefore, it cannot be said that the alibi instruction was so damaging so as to "infect[ ] the entire trial with unfairness." *Real,* 600 F.3d at 309.

Allen's related claim of ineffective assistance of counsel for failing to object to the alibi instruction does not provide him with relief either. The Court deems the foregoing analysis by the Superior Court to be a conclusion that Allen failed to carry his burden to show that he was prejudiced by the failure of his trial counsel to object to the alibi jury instruction, i.e., to show that there was a reasonable probability that the outcome of the trial would have been different had counsel objected to the alibi instruction. The Court also finds that Allen has not carried his burden here to show that the Superior Court's conclusion that Allen failed to show prejudice constituted an unreasonable application of *Strickland.*

It is, therefore, recommended that Claim Three be dismissed.

*Claim Four* - The judgment of acquittal was improperly denied.[9]

Allen did not raise Claim Four on either direct or PCRA appeal. Respondent argues that this claim, therefore, is subject to exhaustion and procedural default bars. The Court agrees with Respondent and finds that Claim Four fails the exhaustion and procedural default requirement for habeas review. To the extent that Allen attempts to establish cause to excuse the procedural default pursuant to *Martinez,* the Court finds that the related underlying ineffective assistance of trial counsel claim is not "substantial" as required by *Martinez*.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. *Commonwealth v. Hutchinson*, 947 A.2d 800, 805 (Pa. Super. 2008), *appeal denied*, 602 Pa, 663 (Pa, 2009). The evidence at trial revealed that the shooting occurred in the morning and that Melissa Yetts had a clear and unobstructed view of the shooter. Ms. Yetts testified at trial that she knew Allen very well as she had been dating him and was with him the previous evening and that she saw Allen shoot the victim, which was her estranged husband. The evidence was clearly sufficient to support the verdict. As noted by Judge Manning, the evidence at trial establishing Allen's guilt was overwhelming. *Allen-1* at 8 (ECF No. 14-1 at 26). Defense counsel cannot be ineffective for failing to raise a meritless argument. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Because there is no merit to Allen's underlying ineffective assistance of trial counsel claim, the procedural default of Claim Four is not excused under *Martinez*. As such, the Court recommends that Claim Four be dismissed because it is barred from habeas review.

---

[9]      This claim, as reworded, is Claim Four raised by Allen in his petition.

*Claim Five - Prosecutorial misconduct regarding Commonwealth witness Melissa Yetts' testimony.*[10]

In Claim Five, Allen contends that the Commonwealth violated its duty to disclose evidence; namely, the statement that Allen made to Ms. Yetts during a phone conversation while he was in prison awaiting trial.[11] Allen did not raise a claim of prosecutorial misconduct in state court; rather any claims regarding Allen's statement to Ms. Yetts were raised as trial court error and/or ineffectiveness claims. As such, like Claims Two and Four, Claim Five fails the exhaustion and procedural default requirement for habeas review.

Further, to the extent that Allen contends that PCRA counsel's ineffectiveness should excuse his procedural default pursuant to *Martinez,* he should be provided no relief. The limited exception of *Martinez* applies only when a petitioner's constitutional claim has not been addressed on the merits. In the instant case, the Superior Court considered and analyzed the underlying issue of this claim in the context of an ineffectiveness claim and found it was without merit:

> In this case, on the morning of trial, the Commonwealth asked Melissa Yetts on direct examination if she spoke with Appellant after the shooting. In response, Mr. Yetts unexpectedly testified that Appellant had called her from jail and told her that "he was sorry; he didn't mean to hurt anybody. He just meant to scare [the victim]." (N.T. Trial, 10/05/06, at 31-32). Trial counsel did not object to this testimony at that time, but made a motion for a mistrial when trial resumed in the afternoon after two other witnesses had testified. (See id. at 58). Counsel based the motion on the fact that the Commonwealth had not provided discovery concerning Ms. Yetts's telephone conversation with Appellant. (See id.). The Commonwealth responded that the first time it was aware of Appellant's telephone comment to Ms. Yetts was when she testified at trial and the police reports provided during discovery corroborated the Commonwealth's representation. (See id. at 59; see also Trial Court Opinion, 11/08/07, at 7).

---

[10]   This claim, as reworded, is Claim Eleven raised by Allen in his petition.

[11]   Claim Five is premised upon the same facts as Claim 1, to wit: that the Commonwealth failed to disclose that Ms. Yetts would testify that Allen, during a telephone conversation while in jail, expressed remorse for the killing of her husband.

Based on the foregoing, we conclude that, because the Commonwealth did not have a duty to disclose evidence that it did not possess, see [*Commonwealth v. Flood*, 627 A.2d 1193, 1200-01 (Pa. Super. 1993), *appeal denied*, 641 A.2d 583 (Pa. 1994)], Appellant has failed to plead and prove his underlying claim that counsel rendered ineffective assistance when he did not timely object to Melissa Yetts's testimony or appeal the trial court's denial of his untimely motion for a mistrial.[2]

> [2] The court denied the motion for a mistrial because it was untimely and on the basis that the Commonwealth had no duty to produce evidence that it did not possess.

*Allen-4* at 15-16 (emphasis added) (ECF No. 14-4 at 15-16). This conclusion was neither contrary to nor an unreasonable application of *Strickland*.

For all these reasons, the Court recommends that Claim 5 be dismissed.

### D.     Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists

of reason would not find it debatable whether each of Allen's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

### E. Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed.  It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge


Dated:  May 25,  2016

cc:     AMIR RASHEID ALLEN
        GX-4384
        S.C.I Forest Correctional Facility
        P. O. BOX 307
        Marienville, PA 16239
        (via U.S. First Class Mail)

        Rusheen R. Pettit
        Office of the District Attorney of Allegheny County
        (via ECF electronic notification)